# Richmond

CHRISTINE JACKSON v. NORTH AMERICA ASSURANCE SOCIETY OF VIRGINIA, INCORPORATED.

September 1, 1971.

Record No. 7554.

Present, All the Justices.

*Morton B. Spero*, for plaintiff in error.

*Malcolm M. Christian* (*Cutchins, Wallinger, Christian & House*, on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

In February 1952 Christine Jackson bought a policy from North

America Assurance Society of Virginia, Incorporated, insuring against the death of her grandson Calvin E. Cook by accidental means. The policy excluded, however, death "by war or any act of war or suffered by the Assured while in military or naval service in time of war". In May 1969 Cook, "who was a member of the United States Army on active duty, was killed in Vietnam while a passenger on a military vehicle on a military mission when the vehicle overturned by accident".

Relying on the exclusionary clause, the Insurance Company denied liability. Christine Jackson then brought this action to recover $1,000, the amount payable to her under the policy unless the exclusionary clause voids the coverage. The trial court held the exclusionary clause applicable and entered judgment for the Insurance Company.

The Insurance Company contends that Cook suffered death "while in the military . . . service in time of war". So we must decide whether, in the context of the insurance policy, the United States is engaged in war in Vietnam.

"[T]here is war in the legal sense, and in the material sense. Legal war exists when there is an interruption of all pacific relations between nations and an authorized contestation of armed forces by the constitutional authority of the nations, while material war is evidenced by the use of armed forces by the parties". *New York Life Ins. Co. v. Bennion*, 158 F.2d 260, 266 (10th Cir. 1946) (dissenting opinion).

[■ Our use of armed forces in Vietnam does not constitute war in the legal sense because Congress has not declared war against North Vietnam. *U.S. Const.* art. I, § 8. For the purposes of this opinion, we may assume that our use of armed forces there does constitute war in the material sense.

The authorities differ sharply in construing the word war as used in exclusionary clauses of insurance policies. Some assign the legal meaning, while others assign the material meaning. *See Hammond v. National Life & Acc. Ins. Co.*, 243 So.2d 902 (La. App. 1971); cases collected in Annot. 36 A.L.R.2d 1018 (1954), 145 A.L.R. 1464 (1943), 137 A.L.R. 1263 (1942); 1A *J. A. and J. Appleman, Insurance Law and Practice* § 561 (1965); *H. Krueger and L. T. Waggoner, The Life Insurance Policy Contract* § 18.6 (1953).[1] We con-

---

[1] Several of the cases referred to in the text involved the Korean conflict in the early 1950's. Only *Hammond* v. *National Life & Acc. Ins. Co., supra*, involved Vietnam. The conflicting views are fully set forth in the majority and dissenting opinions in *Beley* v. *Pennsylvania Mutual Life Ins. Co.*, 373 Pa. 231, 95 A.2d 202 (1953), involving substantially the same question as that before us, and *New York*

strue "war" in the exclusionary clause before us to mean war in its legal sense and, therefore, reverse the judgment appealed from.

We do not bottom our holding on the concept that courts may not take judicial notice that war exists until Congress declares war. *See Pyramid Life Ins. Co. v. Masch*, 134 Colo. 70, 299 P.2d 117 (1956). And we do not bottom our holding on 'ease of decision, though we recognize the difficulty of determining whether certain armed confrontations amount to material wars—*e.g.*, our involvement in Lebanon in 1958 and in the Dominican Republic in 1962— and the difficulty of determining when a material war begins. Knowing that companies have issued policies with clauses excluding coverage in time of war, "declared or undeclared", *see e.g., Goodrich* v. *John Hancock Mut. Life Ins. Co.*, 17 App. Div. 2d 271, 234 N.Y.S.2d 587 (1962), we could not confidently expect to avoid for long our decision whether this country is engaged in a material war in Vietnam.

■ Nor have we decided as a general proposition that the Vietnamese conflict is not war. Whether or not that conflict qualifies as a war in other contexts is quite beside the point "if the word war, as used in the contract [policy], was intended by the parties to mean a state of war which commenced only with a formal declaration by Congress. . . . In construing and interpreting the contract between the parties, it is our function and duty to ascertain and effectuate their lawful intention. In so doing, we should place ourselves in the position of the parties when the contract was made, consider the purposes, the subject matter, and the circumstances under which their minds met." *New York Life Ins. Co. v. Bennion, supra* at 264-65.

■ Since the word war has different meanings, an established rule may suffice to supply the parties' intention to refer to war in its legal sense: If language used in an insurance policy is susceptible of two meanings, one of which will permit recovery and the other will not, the language should be construed most favorably to the insured. *See National Fire Ins. Co. v. Dervishian*, 206 Va. 563, 145 S.E.2d 184 (1965).

■ The Insurance Company argues, however, that it did not bargain to insure against the hazards of armed conflicts. But nothing in the exclusionary language "while in military or naval service in time of war" ties the exclusion to combat-connected hazards. The language purports to exclude all accidents to insured servicemen

---

*Life Ins. Co. v. Bennion, supra,* involving a somewhat different question. A text writer far surpasses the acerbity of the dissenting judges. 1A *J. A. and J. Appleman, Insurance Law and Practice* § 561 at 381 (1965).

during time of war,.whether or not the accidents are.combat-connected or service-connected and whether or not they happen in the combat zone.

We doubt that the parties intended to bargain against coverage for any accident befalling Cook while in military or naval service, provided a court should declare that the United States was then engaged in a material war. Rather, we believe it reasonable to conclude that the parties intended to bargain against coverage only in case of an announced and definite state of war—war in its legal sense.

We reverse the judgment appealed from and enter final judgment for Christine Jackson.

*Reversed and final judgment.*