**UNITED STATES**

v.

**Major James E. HARVEY, United States Air Force.**

**ACM 36862.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 May 2006.

Decided 5 May 2008.

Appellate Counsel for the Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, Lieutenant Colonel Darla G. Orndorff, Captain Christopher L. Ferretti, and Captain Phillip T. Korman.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Matthew S. Ward, and Major Brendon K. Tukey.

Before WISE, BRAND, and HEIMANN, Appellate Military Judges.

## OPINION OF THE COURT

HEIMANN, Judge:

The appellant was arraigned on a single charge and specification of committing an indecent act with a child in violation of Article 134 UCMJ, 10 U.S.C. § 934. Contrary to his plea, a panel of officers convicted him, less some excepted language. The panel sentenced him to be dismissed from the service. The convening authority approved the sentence as adjudged.

On appeal, the appellant asserts three errors. Having reviewed the briefs from both parties and the post trial declarations admitted before this Court, we affirm the findings and sentence as adjudged. We discuss each of the alleged errors below.

### Background

The appellant was a model officer with over 17 years of service at the time of trial. He was an Electronic Warfare Instructor at the USAF Electronic Warfare Training School and had flown over 300 combat hours. He and his wife of almost 17 years had four children. The victim of the offense was his oldest daughter, EH. EH was 12 years old at the time of the offense.

The appellant was convicted of rubbing his fingers on EH's vagina with the intent to satisfy his sexual desires. The evidence showed that the appellant and his two oldest children had gone to visit a family member for the weekend when the incident occurred. The appellant was sleeping in a separate room when the victim left another bedroom after being awoken in the early morning and joined the appellant in his bed. Sometime after the victim joined the appellant in his bed, the assault occurred. At trial, the appellant admitted that the act occurred but contended that it was an involuntary act caused by a disorder known as parasomnia. His expert witness testified that parasomnias are "unpleasant or undesirable, either behaviors or experiences, that occur predominately during the sleep period." The appellant also presented evidence from his wife and his father of acts by the appellant while he was asleep. The prosecution refuted the claim of parasomnia by showing the appellant's actions after the touching demonstrated a consciousness of guilt. In addition to the claim of parasomnia, there was also evidence suggesting that the appellant may have mistaken the victim for his wife at the time of the offense.

### Factual and Legal Sufficiency

Both at trial and on appeal the appellant contends the evidence is insufficient to establish that he committed the act with the intent to satisfy his sexual desires. He asserts that he was unaware of what he was doing but simply "woke up with [his] hands between her legs."

We review court-martial records de novo to consider legal and factual sufficiency. Article 66(c), UCMJ, 10 U.S.C. § 866(c); United States v. Washington, 57 M.J. 394, 399 (C.A.A.F.2002). With regard to legal sufficiency, we ask whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all of the elements of the offense proven beyond a reasonable doubt. United States v. Turner, 25 M.J. 324 (C.M.A.1987). For factual sufficiency, we weigh the evidence in the record of trial and, after making allowances for not having personally observed the witnesses, determine whether we ourselves are convinced beyond a reasonable doubt of the appellant's guilt. United States v. Sills, 56 M.J. 239, 240–41 (C.A.A.F.2002); Turner, 25 M.J. at 325.

Having reviewed the evidence we are satisfied that it is both legally and factually sufficient. First, we find the claim that this assault was the result of parasomnia to be unbelievable. We need not resolve whether appellant suffers from this disorder but simply need to look at the facts and circumstances surrounding the assault itself to eliminate this "defense" for the crime itself. The unrefuted testimony shows that the appellant not only pulled EH's pajamas and panties down but he also pulled them back up when he thought EH began to wake up.[1] Further,

---

1. EH testified she awoke to find the appellant rubbing her vagina over her clothes, and she lay as if asleep while he rubbed her and pulled her pajamas and panties down. She testified when he resumed rubbing her after pulling her panties down, she pretended to wake up, at which time

later in the day, the appellant apologized to EH, saying, "I'm sorry for what I did," and "it'll never happen again." Finally, despite his claim of unconscious acts, he chose not to mention the incident to his wife until several weeks after the events, when he was confronted by her. All of these actions are wholly inconsistent with acts by a person who claims that his actions were a sleep disorder-induced unconscious act.

### Instructional Error

At trial and on appeal the appellant argues that the military judge committed error when she refused to give a defense drafted instruction highlighting the defense's claim of a sleep disorder. The material aspect of the defense proposed instruction provided in part:

> The evidence in this case has raised an issue whether the accused had a medical condition, sleep disorder, and the required state of mind with respect to the offenses of which he is charged. You must consider all of the relevant facts and circumstances. *A person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act.* A bodily movement or movements during unconsciousness or sleep are not voluntary acts within the meaning of this definition.

(Emphasis added.)

At trial, the defense argued that their proposed instruction was necessary to address the *"actus reus* as opposed to *mens rea* defense." The military judge denied the proposed instruction commenting that the mistake of fact instruction and the elements instruction would be sufficient to address the appellant's request.[2] On appeal, the appellant argues the military judge's failure to give this instruction "eviscerated" the appellant's "special defense of sleep disorder."

Whether a military judge properly instructed a panel is a question of law this court reviews de novo. *United States v. Hibbard,* 58 M.J. 71, 75 (C.A.A.F.2003); *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F.2002). When trial defense counsel specifically requests an instruction, and the military judge denies that request, this Court reviews "the military judge's denial of [the] requested instruction ... for abuse of discretion." *United States v. Carruthers,* 64 M.J. 340, 345–46 (C.A.A.F.2007) (citing *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A.1993)). In evaluating whether the military judge's failure to give the requested instruction constitutes error, we will apply a three-prong test to determine whether the requested instruction: (1) was "correct"; (2) "not substantially covered in the main [instruction]"; and (3) covers "such a vital point in the case that the failure to give it deprived [the appellant] of a defense or seriously impaired its effective presentation." *Carruthers,* 64 M.J. at 346 (alteration in original) (citations omitted).

The appellant's assertion raises the claim that his sleep disorder constituted somnambulism or automatism and thus was a special defense under the UCMJ. He argues because it is a special defense he is therefore entitled to an affirmative instruction. The appellee responds by pointing out Rule for Courts–Martial (R.C.M.) 916(k)(2), which expressly notes that a "mental condition not amounting to a lack of mental responsibility under subsection (k)(1) ... is not an affirmative defense." Therefore, the appellee argues that the special instruction is not necessary unless a full insanity defense is raised.

Our review of the case law on this issue discloses very few military cases addressing the issue of unconscious acts.[3] *See, e.g., United States v. Berri,* 33 M.J. 337, 343

---

the appellant pulled her panties and pajamas back up.

2. The mistake of fact instruction went to the sole issue of whether the appellant was mistaken that the person in bed with him was his wife vice EH.

3. In *United States v. Berri,* 33 M.J. 337, 341 (C.M.A.1991), our superior court stated:
   What the status of unconsciousness might be under the Uniform Code of Military Justice, we

do not decide here. Although there was considerable discussion of what the accused may have been conscious of and what consciousness means in a dissociative state, we find even the defense witnesses' testimony too confusing, vague, inconsistent, and off point with regard to the accused's consciousness to raise the defense of unconsciousness.
*Berri,* 33 M.J. at 341 n. 9.

(C.M.A.1991); *United States v. Riege,* 5 M.J. 938 (N.C.M.R.1978); *United States v. Anderson,* 32 C.M.R. 258, 1962 WL 4486 (C.M.A.1962); *United States v. Johnson,* 22 C.M.R. 289, 1957 WL 4627 (C.M.A.1957). Like our sister service in *Riege,* we too find nothing in those cases indicating that unconsciousness merits different consideration from that given any other mental disorder. This conclusion is further supported by the 1986 amendments to Article 50a, UCMJ, 10 U.S.C. § 850a, which eliminated the volitional prong of the sanity defense, and by our superior court's ruling in *Berri,* 33 M.J. 337.[4] *See* Drafter's Analysis, *Manual for Courts–Martial, United States (MCM),* A21–64 (2005 ed.).

■ Thus, we also conclude that unconsciousness is but one of the many disorders encompassed by the defense of insanity and only merits instruction if the defense has properly met their burden on raising it. R.C.M. 916(k)(3). They did not meet that burden in this case. Therefore, the instruction was not required or necessary.

In addition, even if we accept that the evidence raised a UCMJ-recognized special defense of automatism, we still believe no error occurred because the defense has failed to establish error under the other two prongs of *Carruthers.* It is clear from the record that the members were instructed that the prosecution must prove each of the elements of the offense beyond a reasonable doubt, including the element that the act must be done by the appellant with the intent to gratify his sexual desire. This element clearly goes to the question of the voluntariness or consciousness of the appellant's acts and the panel was instructed on the need to conclude the appellant committed the assault with the intent to satisfy his sexual desires to find him guilty. Thus, even if required, the appellant's requested instruction was substantially covered in the main instruction on the intent element of the offense. *See Anderson,* 32 C.M.R. at 259–60.

Finally, we note that the appellant was provided the opportunity to present to the panel both the evidence and the argument to support his defense theory that he was not criminally responsible for his acts. After presenting both expert and lay testimony on the defense's theory, trial defense counsel's closing argument centered exclusively on the argument that the appellant did not commit the acts intentionally and thus he could not be convicted. Thus, the military judge's failure to give the requested instruction did not deprive the appellant of his opportunity to have the panel decide the issue of his criminal liability for the acts.

■ For all of the reasons outlined above, we find the military judge did not abuse her discretion when she refused to give the defense requested instruction.

*Unlawful Command Influence*

Finally, the appellant raises for the first time on appeal a claim of unlawful command influence. In support of his claim, the appellant submitted to this Court an affidavit from the commander who preferred the charge of which he was convicted. In the affidavit, the former commander alleges he was forced to prefer the charges by the Staff Judge Advocate and that he was not convinced of the appellant's guilt at the time of the preferral.

■ While we are well aware of a contrary affidavit from the Staff Judge Advocate, for purposes of this appeal even if we assume that the appellant has sufficiently raised a claim of unlawful command influence, the claim was waived. "Defects in preferring and forwarding charges are waived if not raised at trial, unless the failure to raise the issue is itself the result of unlawful command influence." *United States v. Richter,* 51 M.J. 213, 224 (C.A.A.F.1999) (citing *United States v. Hamilton,* 41 M.J. 32, 37 (C.M.A.1994)).

■ We reject the appellant's assertion that waiver does not apply because it did not come to light until after the trial. As in

---

4. *See also* Major Jeremy A. Ball, *Solving the Mystery of Insanity Law: Zealous Representation of Mentally Ill Servicemembers,* 2005 ARMY LAW. 1 (2005); Mike Horn, *A Rude Awakening: What to Do With the Sleepwalking Defense?,* 46 B.C. L.

REV 149 (2004); Major Michael J. Davidson and Captain Steve Walters, *United States v. Berri: The Automatism Defense Rears Its Ugly Little Head,* 1993 ARMY LAW. 17 (1993).

*Richter*, this evidence was readily available to appellant before trial. *Id.* In fact, the appellant submitted a sentencing character letter from this same commander at trial. Clearly, the appellant had the opportunity to discover these claims before the trial itself. There being no suggestion that the issue was not raised at trial because of unlawful command influence, waiver applies.

### Delay

In this case, the overall delay of 726 days between the trial and completion of review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006). Because the delay is facially unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135–36. When we assume error, but are able to directly conclude that any error was harmless beyond a reasonable doubt, we do not need engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F.2006). This approach is appropriate in the appellant's case.

Having considered the totality of the circumstances and entire record, we conclude that any denial of the appellant's right to speedy post-trial review and appeal was harmless beyond a reasonable doubt and that no relief is warranted.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000).

Accordingly, the approved findings and sentence are

AFFIRMED.

Judge BRAND did not participate.